IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.   ) | **CR. NO. 2:06cr273-MHT** |
| ) | |
| **AUBREY GOODWIN** ) | |

**RESPONSE TO MOTION IN LIMINE**
**TO EXCLUDE RULE 404(b) EVIDENCE**

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and in response to Defendant Aubrey Goodwin's Motion In Limine to Exclude Rule 404(b) Evidence, states as follows:

BACKGROUND

On May 21 and June 11, 2003, the defendant sold ounce quantities of cocaine base, commonly referred to as "crack" to a Confidential Informant[1] ("CI") who was assisting DEA Task Force Officer Larry Hubbard ("TFO Hubbard"). The CI was given a transmitting device which allowed the agents to record the conversation that occurred between the defendant and CI during both controlled buys. A transcript of the conversations was produced

---

[1] The CI had been assisting TFO Hubbard since October 2001 in locating, identifying and making controlled buys from drug traffickers. Therefore, when a mutual friend, who was not aware of the relationship the CI had with TFO Hubbard, asked the CI to ride with him, the CI agreed.

and provided, along with the audiotapes during the initial disclosures, pursuant to the Standing Order on Criminal Discovery.

Approximately one or two months prior to making these controlled buys, the CI was introduced to the defendant by a mutual friend. It was during this introduction that the CI witnessed the defendant sell an ounce of crack and an unknown quantity of marijuana to the mutual friend. It was also during this initial meeting that the CI discussed purchasing crack from the defendant in the future and asked the defendant if it would be necessary to return with the mutual friend in order to do business with the defendant. The defendant agreed to sell crack to the CI and told him (Confidential Informant) it would not be necessary for the mutual friend to be present. Later that same day, the CI telephoned TFO Hubbard and informed him of these events and a proactive investigation of the instant case ensued.

## ISSUES/DISCUSSION

First, the defendant asserts in his motion that the Court should exclude the introduction of two audiotape transcripts which are alleged to be purchases of crack cocaine on May 21, 2003, and June 11, 2003. Second, he seeks an order from the Court precluding the government from using testimony which he contends falls under the umbrella of "prior bad acts" as that term is used in Rule 404(b), Federal Rules of Evidence.

The United States acknowledges that Rules 401, 402, and 403, <u>Federal Rules of Evidence</u>, prohibit the admission of certain evidence even when relevant to the issues to be decided at trial. However, the defendant's reliance on the general propositions of these rules without case law is misplaced.

With respect to the first argument, it appears the defendant is asserting that the audiotapes are "so distorted and filled with static as to be virtually inaudible . . ." and, therefore, the transcripts produced by the United States should be excluded. The United States disagrees with the defendant's characterization of the audiotapes. An unbiased listener will be able to hear two distinct voices[2] engaged in a very brief conversation on separate occasions. The CI will identify the voices on the tapes and testify that during these tape-recorded conversations the defendant was selling crack to the CI while the CI was assisting TFO Hubbard in making controlled buys from the defendant.

Providing jurors with verbatim transcripts of relevant taped conversations is a recognized trial technique, and is within a trial court's sound discretion. Doing so enables jurors to read a

---

[2] TFO Hubbard's voice is the only unidentified voice on the transcripts disclosed to the defendant. The United States agrees that the preamble, i.e., TFO Hubbard's introductory comments, should be redacted from the tapes and transcripts. To that end, the United States has produced a redacted version of both the transcripts and the tapes.

properly authenticated transcript while listening to the tape being played in open court. United States v. Brown, 872 F.2d 385, 392 (11th Cir. 1989); see also, United States v. Cruz, 765 F.2d 1020 (11th Cir. 1985)(transcripts of tape recordings may be admissible as substantive evidence). The process of authenticating a transcript closely parallels the process of authenticating a tape recording, i.e., "there must be some evidence that the transcripts are accurate - that the words are accurately reproduced and the voices accurately identified." United States v. Rochan, 563 F.2d 1246, 1251 (5th Cir. 1977). The Rochan court suggested a procedure, in essence as follows:

> 1. The proponent shows that the tapes have been in the government's custody from the time of their making until transcription;
>
> 2. A witness testifies that the words on the transcript accurately reflect those spoken words as captured on tape. Such a witness may be the stenographer who typed the transcript while listening to the tape; an agent who compared the tape to the transcript; or another person who either heard the tape or participated in the conversation; and
>
> 3. The transcript identifies and distinguishes the voices of the speakers.

As previously stated, and consistent with the holding in Rochan, the CI and agents will authenticate the tapes and transcripts during trial.

**Finally, it is the practice of this Court to give a cautionary jury instruction before transcripts are shown and/or admitted into evidence. Specifically, the Court instructs the jury that the tapes are evidence and if they conclude that the transcript differs from what is heard on the tape, it is the content of the tape that controls.**

**Turning now to the defendant's second argument, i.e., the defendant's sale of crack to a mutual friend should be excluded because it is a prior bad act and is uncharged conduct. The Eleventh Circuit has held that ". . . evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. <u>United States v. Ramsdale</u>, 61 F.3d 825, 829 (11th Cir. 1995). Evidence, not part of the crime charged but pertaining to a chain of events explaining context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story for the jury." <u>United States v. McLean</u>, 138 F.3d 1398, 1403 (11th Cir. 1998), citing <u>United States v. Williford</u>, 764 F.2d 1493, 1499 (11th**

5

Cir. 1985). The United States believes that the defendant's conduct at the initial meeting is inextricably intertwined with the offenses charged in the indictment and is vital to an understanding of the context of the government's case. Similar to <u>McLean</u>, it explains why the defendant was a target of the investigation and the relationship between the defendant and the CI. Remember, the CI went to the meeting for the sole purpose of finding out if the defendant sold crack and to ask the defendant if he (the defendant) would sell crack to the CI. To limit the testimony to simply a meeting without a purpose and to say the CI had a subsequent meeting with the defendant during which the CI purchased crack, simply makes no sense and would seriously prejudice the government's case by impermissibly discrediting the confidential informant.

For the reasons stated above, the defendant's motion should be denied.

**Respectfully submitted this 13th day of September, 2007.**

          **LEURA G. CANARY**
          **UNITED STATES ATTORNEY**

          **/s/ Louis V. Franklin, Sr.**
          **LOUIS V. FRANKLIN, SR.**
          **Assistant United States Attorney**
          **131 Clayton Street**
          **Montgomery, Alabama 36104**
          **Phone: (334) 223-7280**
          **Fax: (334) 223-7135**
          **E-mail: louis.franklin@usdoj.gov**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr273-MHT |
| | ) | |
| **AUBREY GOODWIN** | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: John M. Poti.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Louis V. Franklin, Sr.
> LOUIS V. FRANKLIN, SR.
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, Alabama 36104
> Phone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: louis.franklin@usdoj.gov